**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Equus Computer Systems, Inc.,

Plaintiff,

v.

Northern Computer Systems, Inc., being sued as Northern Computer Technologies, Inc., d/b/a "Nortech Computer Systems, Inc.," and Jay T. Erickson,

Defendants.

Civil No. 01-657 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Thomas E. Propson, Esq. and Barton C. Gernander, Esq., Meagher & Geer, 4200 Multifoods Tower, 33 South 6th Street, Minneapolis, Minnesota 55402, appeared on behalf of Plaintiff.

Donald C. Mark, Jr., Esq. and Shannon M. McDonough, Esq., Fafinksi, Mark & Johnson, 6600 City West Parkway, Suite 300, Eden Prairie, Minnesota 55344 and Carla Condiff, Esq. of Nortech Computer Systems, Inc., appeared on behalf of Defendants.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on April 30, 2001, pursuant to Plaintiff's motion for a temporary restraining order. For the reasons stated below, the Court grants Plaintiff's motion in part and denies it in part.

## Background

Defendant Erickson was employed as a sales representative by Plaintiff Equus Computer Systems, Inc. ("Equus") from December 1996 through March 30, 2001. Equus manufactures custom-built computer systems for primarily three categories of customer: Value Added Resellers ("VARs"), Designated Systems Groups ("DSGs"), and large group purchasers. VARs operate as wholesalers to particular markets; for example, a VAR catering to advertising agencies

MAY 04 2001
FILED
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

would contract with Equus to design a computer system specific to advertising which the VAR would then buy and resell to agencies within the market. In contrast, DSGs typically are manufacturers of another product or system which incorporates the computer Equus would produce, e.g. the manufacturer of a computer-driven printing press. The final category of large-scale purchasers is made up of customers such as school systems, other government entities, and large companies.

While an employee for Equus, Plaintiff signed an "Electronic Mail Agreement," the conditions of which stated in relevant part:

> * * *
>
> B. Equus email service may not be used for: unlawful activities, commercial purposes not under the auspices of Equus, and uses that violate other Equus policies or guidelines. The latter include, but are not limited to, policies and guidelines regarding disclosure of Equus *trade secret or **confidential information . . .
>
> C. User is expected to comply with state and federal laws, and other policies and procedures of Equus. . . .
>
> * * *
>
> **B. "Trade Secrets" include, but are not limited to, any items developed or completed by the User during the course of employment with the company, such as patents, inventions, processes, formulae, copyrights, trademarks, trade names, or proprietary information.
>
> ***C. "Confidential Information" shall mean any information concerning the operation of the Company or its customers, which is of a non-public nature. This includes, but is not limited to: any file or document (electronic or hard copy) established by or under the control of the employee during the course of employment, customer lists, account information, payment schedules, price lists, supplier information, Company's personnel or financial documents.

While there is no evidence that Plaintiff also signed any document identified as a "confidentiality agreement" and/or any statement indicating his knowledge of or commitment to the Employee Handbook, the Equus Employee Handbook states in relevant part:

> **Rules of Conduct**
> ***Confidentiality***
> During your employment with Equus, you may have or receive access to confidential Company information including but not limited to: financial data, business practices and strategies, employee records, proprietary property, suppliers, specialized equipment, production techniques, and customer records and data. This information is confidential and is not to be disclosed to any person with the exception of properly authorized Equus representatives. All employees are responsible for protecting the confidentiality of this information during their employment and anytime thereafter. A violation in this policy can result in discipline, including termination or legal action against you by Equus.

Sometime during February 2001, Defendant Erickson met with a representative of Defendant Nortech Computer Systems, Inc. ("Nortech"). In February and March 2001, Defendant Erickson sent eighty-three Equus documents via e-mail from his computer at Equus to his computer at home. Included among the documents were: (1) credit reports regarding Equus' Minnesota customers, providing the amount of equipment purchased, payment history, and credit limit per customer; (2) customer lists for all of Equus' Minnesota customers; (3) marketing and sales plans for 2001; (4) marketing promotions; (5) commissions and incentives paid to sales staff; (6) customer-requested quotes; (7) material costs and profit margins for products in inventory; and (8) a computer program designed to configure quotations for customers. There is also evidence that a certain portion of Equus' Web site dedicated to account information and product estimates was accessed via the unauthorized use of customer passwords. Plaintiff contends and Defendant does not deny that such access occurred during the final week of Erickson's employment with Equus from both his Equus computer and computers at Nortech. In addition, on March 28, 2001, Erickson sent an e-mail containing a copy of the configuration program to an Equus customer, stating "This is proprietary and is not to be shared or distributed to anyone (including Equus) outside you organization."

On March 30, 2001, Defendant Erickson deleted the contents of the hard drive of his Equus computer and terminated his employment with Equus. Erickson began working at Nortech as a sales representative in the custom-built computer market on April 2, 2001.

Equus brought this action against Defendants Erickson and Nortech alleging: (1) misappropriation of trade secrets in violation of Minnesota Uniform Trade Secrets Act, Minn. Stat. §§ 325C.01, *et seq.*; (2) trespass to chattels; (3) conversion; (4) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and (5) violation of Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, *et seq.* In addition, Plaintiff brings claims against Defendant Nortech for tortious interference with current contracts and against Defendant Erickson for breach of a duty of loyalty, breach of contract, and tortious interference with prospective contracts. Equus moves for a temporary restraining order, seeking: (1) the return of all proprietary information, whether in its original, copied, or incorporated form, and an injunction against its use; (2) expanded discovery with an expedited schedule; and (3) a sixty-day period during which Erickson and Nortech are enjoined from competing with Equus.

**Discussion**

**A. Standard of Review**

Under Eighth Circuit precedent, a temporary restraining order may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d

1219, 1222 (8th Cir. 1986), *cert. denied*, 479 U.S. 1070 (1987). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

**B. Likelihood of Success on the Merits**

While Plaintiff has alleged various state law claims and two claims under federal statutes, the Court declines to evaluate the likelihood of success for each claim, finding a sufficient likelihood of success on the merits of Plaintiff's claim of misappropriation of trade secrets under Minn. Stat. § 325C.01, *et seq*. Minn. Stat. § 325C.01, subd. 5, defines trade secrets as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Under Minn. Stat. § 325C.02 (a), "[a]ctual or threatened misappropriation may be enjoined."

The alleged proprietary information does not clearly fall within the examples of protected information under the Act. However, the Court finds that Plaintiff has provided sufficient explanation of the proprietary nature of the documents at issue. The custom-built computer market has been explained as narrow, but lucrative and sensitive to time and customer relationships. In fact, knowledge of the mere identity of DSG customers is extremely valuable given their rarity and the uniqueness of their potential business. All of the documents fall within those afforded confidential status under the Electronic Mail Agreement and the Employee Handbook. The Court does not find that labeling something as "confidential" automatically

confers proprietary or trade mark status. However, the nature of the custom-built market and the documents at issue represent circumstances where the knowledge of the financial capabilities of a competitor and the product needs, financial capabilities, and sometimes even identity of potential customers is extremely valuable. All of the documents at issue contain information that a competitor could use to out-bid or out-maneuver Equus in the custom-built market.

In addition, Defendants' alleged actions represent a substantial threat that the documents will actually be used in competition against Plaintiff. The timing of Defendant Erickson's alleged actions, in combination with the scope of the information taken, is particularly troubling to the Court. Defendant has provided no explanation as to why he needed access to any or all of the documents from his home computer, regardless of whether he had a practice of sending work home or whether such a practice comported with company policy. Given that most of the documents were sent to his home computer after he had apparently decided to work with Nortech, Defendant Erickson's actions are increasingly suspect. Moreover, the nature of Defendant Erickson's new position with Nortech will place both Defendants in direct competition with Equus.

**C. Irreparable Harm**

"When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose." *United States v. White*, 769 F.2d 511, 515 (8th Cir. 1985). The mere threat of misappropriation of trade secrets constitutes irreparable harm and warrants injunctive relief. *See* Minn. Stat. § 325C.02. If the proprietary information at issue is used inappropriately, then Plaintiff could lose valuable customers, both long-standing and potential, and contract opportunities. Given the nature of the custom-built market, such harm would be

irreparable. The fact that Plaintiff has altered its Web site so that further unauthorized access cannot occur does not eliminate the potential for harm to occur.

**D. Balance of Harms and Public Interest**

Assuming to be true Defendant Erickson's contention that he sent the relevant documents to his home computer during the regular course of business with no intention of using them in competition against Equus, the Court finds that there would be virtually no harm to Defendants if they were ordered to return the documents to Equus. To the extent that an injunction against both Defendants would limit their ability to compete, such harm would not be great given that the custom-built market admittedly has not been the primary focus of Nortech's business, and given both Defendants' unrestrained ability to continue to use non-Equus contacts and information to continue working in the custom-built market. Moreover, the public interest certainly favors the protection of legitimate business interests and the discouragement of unfair competition.

**E. Relief**

In its consideration of the *Dataphase* factors, the Court finds that Plaintiff's motion warrants injunctive relief. However, the Court declines to provide all of the provisions requested by Plaintiff. The Court finds it appropriate to require Defendants to return to Plaintiff all documents relating to Equus proprietary information, whether such documents be Equus documents or Nortech/Erickson documents incorporating Equus proprietary information. Such proprietary information includes, but shall not be limited to: (1) credit reports regarding Equus' Minnesota customers, providing the amount of equipment purchased, payment history, and credit limit per customer; (2) customer lists for all of Equus' Minnesota customers; (3) marketing and sales plans for 2001; (4) marketing promotions; (5) commissions and incentives paid to sales

staff; (6) customer-requested quotes; (7) material costs and profit margins for products in inventory; and (8) a computer program designed to configure quotations for customers. To the extent that such documents may also include Nortech proprietary information, the documents shall be provided to the Court under seal for *in camera* review, and an appropriately redacted copy shall be provided to Plaintiff. All documents subject to the above qualifications shall be provided by Monday, May 7, 2001, at 3:00 p.m.

Furthermore, Defendants Erickson and Nortech shall be enjoined from using in competition against Equus any of the above documents or the Equus proprietary information that the relevant documents contain. The scope of this relief contemplates that both Defendants Erickson and Nortech will refrain from contacting Equus clients other than VARs, large group purchasers, and/or those who Defendant Erickson brought with him from Supercom to Equus, and that in initiating and dealing with any such contacts, Defendants will refrain from using Equus proprietary information.

The Court declines to enjoin Defendants entirely from competing within the custom-built market. In general, a Court may not impose a covenant not to compete where such a covenant never existed. *See E.W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1112-1113 (8th Cir. 1969) (discussing covenants not to compete and injunctions against the misappropriation of trade secrets); *Int'l Business Mach. Corp. v. Seagate Tech., Inc.*, 941 F. Supp. 98, 101 (D. Minn. 1992) ("A claim of trade secret misappropriation should not act as an *ex post facto* covenant not to compete."). Plaintiff's contention that Defendant Erickson will inevitably disclose the proprietary information of which he has knowledge is not determinative. To begin, the Court finds no precedent establishing the Eighth Circuit's adoption of the inevitable disclosure doctrine as set forth in *Pepsico, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995). Nonetheless, the Court

also finds that Plaintiff has not established that Defendants can only compete against Equus by using the information at issue. While the allegations of Defendant Erickson's behavior are certainly troubling to the Court, the Court finds that imposing a "cooling off" period would be too broad, and the previously described relief is sufficiently tailored to remedy the alleged behavior, pending a hearing for preliminary injunction.

At this time, the Court declines to provide any of the relief related to expedited and expanded discovery, despite Defendants' agreement to certain requested provisions. Included in the Court's determination are Plaintiff's requests for production of Defendants' computers. As the Court explained at the hearing, such discovery is not taken lightly, and if deemed appropriate, then certain procedures must be followed in order to protect all interested parties. The Court will refer to Magistrate Judge Arthur J. Boylan all matters relating to discovery so that a reasonable, fair, and efficient means of discovery may be negotiated.

The Court declines to grant Plaintiffs request with respect to distributing this order "to any entity with whom it suspects Nortech or defendant Erickson are [sic] doing business" and to permit discovery of these entities. While the Court makes no finding about the propriety of either aspect of the requested remedy, the Court declines to grant explicit authorization for Plaintiffs to do as requested.

The Court finds that it is appropriate for Plaintiff to post bond. While the Court has declined to grant a restraining order of the scope Plaintiff requested, the Court finds that there is sufficient restraint on both Defendants to warrant the imposition of a bond. Thus, the Court will require that Plaintiff post a bond of $10,000.

For the reasons stated, **LET IT BE ORDERED** THAT:

1. Plaintiff's Motion for Temporary Restraining Order (Doc. No. 3) is **GRANTED** as follows:

a. Defendants Erickson and Nortech are required to return to Plaintiff all documents relating to Equus proprietary information, whether such documents be Equus documents or Nortech/Erickson documents incorporating Equus proprietary information. Such proprietary information includes, but shall not be limited to: (1) credit reports regarding Equus' Minnesota customers, providing the amount of equipment purchased, payment history, and credit limit per customer; (2) customer lists for all of Equus' Minnesota customers; (3) marketing and sales plans for 2001; (4) marketing promotions; (5) commissions and incentives paid to sales staff; (6) customer-requested quotes; (7) material costs and profit margins for products in inventory; and (8) a computer program designed to configure quotations for customers.

b. To the extent that such documents described in section (a) may also include Nortech proprietary information, the documents shall be provided to the Court under seal for *in camera* review, and an appropriately redacted copy of each document shall be provided to Plaintiff.

c. All documents subject to sections (a) and (b) shall be provided by Monday, May 7, 2001, at 3:00 p.m.

d. Defendants Erickson and Nortech are **ENJOINED** from using in competition against Equus any of the above documents or the Equus proprietary information that the relevant documents contain. The scope of this relief contemplates that both Defendants Erickson and Nortech will refrain from

contacting Equus clients other than VARs, large group purchasers, and/or those who Defendant Erickson brought with him from Supercom to Equus, and that in initiating and dealing with any such pre-Equus or non-DSG customers, Defendants will refrain from using Equus proprietary information.

e. Within 72 hours of this order, Plaintiff shall post a bond of $10,000.

f. The parties shall contact Kathy Thobe, Magistrate Judge Arthur J. Boylan's Calendar Clerk, at 651-848-1210, to set up a scheduling conference pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and to resolve the discovery issues raised by Plaintiff as requested relief in the current motion.

Dated: May 4, 2001

DONOVAN W. FRANK
Judge of United States District Court