UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Equus Computer Systems, Inc.,

Plaintiff,

v.

Northern Computer Systems, Inc., being sued as Northern Computer Technologies, Inc., d/b/a "Nortech Computer Systems, Inc."; Jay T. Erickson; and Sean Quinlan,

Defendants.

Civil No. 01-657 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Thomas E. Propson, Esq. and Clinton S. Bogden, Esq., Meagher & Geer, 4200 Multifoods Tower, 33 South 6th Street, Minneapolis, Minnesota 55402, on behalf of Plaintiff.

Shannon M. McDonough, Esq. and Donald C. Mark, Jr., Esq., Fafinksi, Mark & Johnson, 6600 City West Parkway, Suite 300, Eden Prairie, Minnesota 55344, on behalf of Defendants.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on July 12, 2002, pursuant to Plaintiff's motion for a preliminary injunction. On May 4, 2001, the Court entered a temporary restraining order: (1) requiring Defendants Erickson and Nortech to return to Plaintiff all documents relating to Equus proprietary information, whether such documents were Equus documents or Nortech/Erickson documents incorporating Equus proprietary information; and (2) prohibiting Defendants Erickson and Nortech from using in competition against Equus any of the above documents or the Equus proprietary information that the relevant documents contained. The Court specifically stated that "[t]he scope of this relief contemplates that both Defendants Erickson and Nortech will refrain from contacting Equus clients other than VARs, large group purchasers, and/or those who Defendant Erickson

JUL 2 2 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

brought with him from Supercom to Equus, and that in initiating and dealing with any such pre-Equus or non-DSG customers, Defendants will refrain from using Equus proprietary information."

Since the issuance of the temporary restraining order, Plaintiff has added to its Complaint Defendant Sean Quinlan, a former Equus sales representative who joined Nortech after the commencement of the current suit. By its current motion, Plaintiff seeks to continue the existing restraining order against all Defendants, and it seeks to enjoin Defendants from contacting and/or doing business with any Equus VAR customers with which none of the Defendants had developed or enhanced an existing customer relationship prior to Erickson's employment with Nortech. For the reasons set forth below, the Court grants Plaintiff's motion in part.

**Background**

Within its Memorandum Opinion and Order granting Plaintiff's request for a temporary restraining order, the Court set forth the background facts of the current dispute in significant detail. Rather than repeat such an extensive description here, the Court will focus on those facts that have been newly revealed and those that are specific to the Court's ensuing discussion of Plaintiff's current motion.

As an initial matter, since the issuance of the temporary restraining order, Plaintiff has added Defendant Sean Quinlan ("Quinlan") to its complaint. Quinlan began working as a sales representative for Equus in 1996; subsequent to the filing of the current lawsuit, Quinlan began working as a sales representative for Defendant Nortech. Plaintiff does not allege that Mr. Quinlan misappropriated any Equus proprietary information by way of e-mail or by any other means.

Plaintiff's allegations continue to revolve around the conduct of Defendant Erickson. As the Court has outlined in its previous orders, Plaintiff alleges that, before and during his transition to Nortech, Defendant Erickson misappropriated Equus proprietary information, in significant part, by e-mailing Equus documents to his home computer and by improperly using customer passwords to access proprietary information on the Equus web site. Specifically, Equus contends that the proprietary information misappropriated by Erickson includes: (1) aging information on all Minnesota accounts; (2) pricing information; (3) marketing information; (4) customer lists; (5) account classifications for all or most Equus Minnesota accounts; (6) credit terms; and (7) margin levels for specific accounts. In addition, Equus contends that both Erickson and Quinlan improperly maintained and brought to Nortech a spreadsheet list of customers and contacts, including Equus customers with whom they had not developed or substantially enhanced a customer relationship.

Of particular concern to Equus are the two documents or categories of information that it identifies as "lethal sales tools"–the aging report and the customer list. The aging report shows a customer's buying history, thus indicating which customers buy in large volume, and the report also shows whether a customer is a potential credit risk. Plaintiff maintains that such reports are generally distributed only to the sales representative handling the particular account. However, on one occasion, by the mistake of an Equus employee, an aging report, to which Erickson otherwise would not have been privy, was widely distributed; Equus contends that Erickson e-mailed the aging report to his home computer. With respect to the customer list, Equus contends that Erickson sent an e-mail to Nortech, entitled "new leads" and containing the entire list of Equus Minnesota customers, their address, Equus sales representative, and Equus account classification. In addition to these two documents, Equus also focuses on Erickson's allegedly

unauthorized use of customer passwords to access the Equus web site and valuable pricing information. Equus contends that such pricing information is proprietary because the "white-box" computer market has become so saturated and equalized that competition revolves primarily around price. Erickson contends, however, that he accessed only one account at the authorization of the customer and that, to the extent that he accessed the web site from Nortech, he did so only to observe the web site configuration and not the pricing information contained within.

Equus contends that it provides proprietary information to its employees on a need to know basis. In support of this contention, Equus points to the assignment of only one sales representative to the DSG industry segment, the use of computer database software that limits an employee's access to only those customers with whom he or she does business, and the use of e-mail confidentiality agreements[1] and an employee handbook containing a confidentiality

---

[1] The Equus e-mail agreement states in relevant part:

* * *

B. Equus email service may not be used for: unlawful activities, commercial purposes not under the auspices of Equus, and uses that violate other Equus policies or guidelines. The latter include, but are not limited to, policies and guidelines regarding disclosure of Equus *trade secret or **confidential information . . .

C. User is expected to comply with state and federal laws, and other policies and procedures of Equus. . . .

* * *

*B. "Trade Secrets" include, but are not limited to, any items developed or completed by the User during the course of employment with the company, such as patents, inventions, processes, formulae, copyrights, trademarks, trade names, or proprietary information.

**C. "Confidential Information" shall mean any information concerning the operation of the Company or its customers, which is of a non-public nature. This includes, but is not limited to: any file or

(continued...)

provision.[2] Erickson and Quinlan both signed e-mail confidentiality agreements. Quinlan signed a form acknowledging his receipt of the employee handbook; Erickson did not sign any such form and contends that no request was ever made that he do so. Significantly, Defendants contend that, while Equus may have begun using restrictive database software as it contends, the original software provided open access to customer lists and remained available for use by all Equus employees even after the more limiting software was put in place.

Equus contends that, despite the Court's May 4, 2001, temporary restraining order, Defendants have continued to make inappropriate sales calls to Equus customers. By its current motion, Plaintiff seeks: (1) a permanent injunction against Defendants, prohibiting them from contacting any Equus DSG customer; and (2) a two-year injunction against Defendants,

---

[1](...continued)

> document (electronic or hard copy) established by or under the control of the employee during the course of employment, customer lists, account information, payment schedules, price lists, supplier information, Company's personnel or financial documents.

[2] The confidentiality provision of the Equus Employee Handbook states in relevant part:

> **Rules of Conduct**
> ***Confidentiality***
> During your employment with Equus, you may have or receive access to confidential Company information including but not limited to: financial data, business practices and strategies, employee records, proprietary property, suppliers, specialized equipment, production techniques, and customer records and data. This information is confidential and is not to be disclosed to any person with the exception of properly authorized Equus representatives. All employees are responsible for protecting the confidentiality of this information during their employment and anytime thereafter. A violation in this policy can result in discipline, including termination or legal action against you by Equus.

prohibiting them from contacting any Equus VAR customer that neither Erickson nor Quinlan ever serviced while at Equus.

## Discussion

### I. Standard of Review

Under Eighth Circuit precedent, a preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.,* 799 F.2d 1219, 1222 (8th Cir. 1986), *cert. denied*, 479 U.S. 1070 (1987). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

### II. Likelihood of Success on the Merits

As the Court stated in its Memorandum Opinion and Order granting a temporary restraining order, the Court's evaluation of the first *Dataphase* factor will not address all of Plaintiff's claims because the Court finds a sufficient likelihood of success on Plaintiff's claim of misappropriation of trade secrets. Minn. Stat. § 325C.01, subd. 5, defines trade secrets as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Under Minn. Stat. § 325C.02 (a), "[a]ctual or threatened misappropriation may be enjoined."

The Court does not change its position on the proprietary nature of the identity of Equus' DSG customers. Defendants' argument to the contrary, that the identity of a DSG customer is readily ascertainable given the amount and nature of information that is publicly available through such avenues as the Internet and trade magazines, is not persuasive. While it may be true that diligent research could unearth the identity of a particular company that happens to be an Equus DSG customer, Defendants do not contest that there is no way to actually confirm the DSG classification through information that is publicly available. Moreover, the name assigned to this class of customers–DSGs, CSDs, system integrators, or vertical integrators–is entirely irrelevant. In *Surgidev Corp. v. Eye Technology, Inc.*, 648 F. Supp. 661, 683 (D. Minn. 1986), the court found value in the identity of a certain class of customers because it was not readily ascertainable by competitors. The same is true in the instant case. And, in light of the timing and circumstances under which Erickson obtained the information at issue, there is a significant threat that the information will be used in competition against Equus. Accordingly, the Court continues to find that there is a sufficient likelihood that Plaintiff will succeed in establishing that Erickson misappropriated the trade secret of the identity of Equus' DSG customers.

With respect to the overall customer lists allegedly misappropriated by Erickson, however, the Court finds it to be unlikely that Plaintiff will be able to establish that the customer list should be afforded trade secret status. While the Court certainly does not condone the alleged conduct of Erickson, it does appear to be more likely true than not that the mere identity of Equus' VAR customers is readily ascertainable and indeed may already have been known to

Nortech before Erickson or Quinlan changed employers. However, the documents compiling information relating to each Equus customer, such as buying and payment history, and documents relating to marketing and pricing, do represent information that is not readily ascertainable through public means. As the Court stated in its Memorandum Opinion and Order granting the temporary restraining order, such information could be used by a competitor to out-bid or out-maneuver Equus in the custom-built computer market. Moreover, even considering the availability of certain customer-related information to Equus employees after the implementation of limiting software, the Court finds that the confidentiality and e-mail agreements and the limited distribution of information relating to particular customers, *e.g.*, the aging reports, exhibit reasonable efforts to maintain the confidentiality of such information. As a result, there is a significant likelihood that Plaintiff will be able to establish that such information is protectable.

Finally, to the extent that the spreadsheet customer lists maintained by Erickson and Quinlan contain any of the customer-related information which the Court has determined will likely be proven protectable, the same injunctive relief shall apply to its use. However, to the extent that such lists contain only the identity of Equus customers, without more, Plaintiff has failed to establish that the identity of such customers is not readily ascertainable, and thus has failed to establish that such lists contain protectable information.

## III. Irreparable Harm

"When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose." *United States v. White*, 769 F.2d 511, 515 (8th Cir. 1985). The mere threat of misappropriation of trade secrets constitutes irreparable harm and warrants

injunctive relief. *See* Minn. Stat. § 325C.02. As exhibited by the current dispute before the Court, the access to customers within the custom-built computer market is highly competitive. If Defendants are not enjoined from using in competition against Equus such proprietary information that was allegedly misappropriated, then Equus could lose substantial market share and valuable customer relationships.

## IV. Balance of Harms and Public Interest

In light of the Court's analysis, if the injunction were to issue protecting the identity of Equus DSG customers and the use of marketing, pricing, and customer-related information other than identity, then the harm to Defendants would be minimal because they would not be entirely precluded from competing in the custom-built computer market. Moreover, Defendants could continue operating in the segments of the market in which Nortech operated before hiring Erickson and Quinlan. The public interest favors the protection of legitimate business interests and the discouragement of unfair competition. Any injunctive relief afforded by the Court will be tailored to meet those interests while not unnecessarily precluding Defendants from continuing to compete fairly in the custom-built market.

## V. Relief

While employed by Equus, neither Defendant Erickson nor Defendant Quinlan signed a covenant not to compete. Indeed, "[a] claim of trade secret misappropriation should not act as an *ex post facto* covenant not to compete." *International Bus. Mach. Corp. v. Seagate Tech., Inc.,* 941 F. Supp. 98, 101 (D. Minn. 1992) (citing *E.W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1112-13 (8th Cir. 1969). Because the allegations in support of Plaintiff's current motion relate to the conduct of Defendant Erickson, the Court will order injunctive relief that relates to the conduct of Defendant Erickson and how it may affect the conduct of others.

However, the Court declines to issue injunctive relief directly restricting the conduct of Nortech and Quinlan because no allegations of their conduct support the current motion before the Court.

Accordingly, the Court will continue to enjoin Defendant Erickson from competing against Equus or facilitating competition against Equus through the use of the Equus marketing, pricing, and customer-related information that he is alleged to have misappropriated. Moreover, Defendant Erickson is prohibited from contacting or facilitating the contact of Equus DSG clients unless any such client was one with whom Erickson had already developed a customer relationship. To the extent that Defendants are able to identify customers through information readily available to the public or through other proper means, Defendants are not prohibited from contacting Equus VARs or large group purchasers. The effect of the current Order will be to continue the relief granted by the Court's May 4, 2001, temporary restraining order; however, the Court declines to grant any further relief requested by Plaintiff.

By its current order, Defendants are not *permanently* enjoined from contacting Equus DSG customers; however, such relief shall endure until further resolution of the underlying suit. In light of the parties' preparedness communicated at hearing, the Court shall set the current matter on for trial for some time in late September or early October. The parties are respectfully directed to contact Lowell Lindquist, Calendar Clerk for Judge Donovan W. Frank at 651-848–1296, in order to set a firm trial date.

The conduct attributed to Defendant Erickson is entirely reprehensible. While an employee is certainly entitled to take with him the experience and knowledge gained while working with an employer, no entitlement exists for the underhanded misappropriation of a company's significant resources represented through its documents and databases. Their value is underscored by the ends to which Erickson is alleged to have gone to collect such information.

That being said, however, two companies and their employees may engage in *fair* competition against each other within an industry, and the industry will undoubtedly remain strong if the corporations and each individual adheres to principles of fairness. To that end, the Court will further require that Defendant Nortech monitor the conduct of Defendant Erickson in order to ensure that any Equus proprietary information as determined through this Court's orders shall not be used in competition against Equus.

Finally, upon receipt of this Court's decision, should the parties evaluate their positions and determine that the remaining issues in this case could be determined with the assistance of Magistrate Judge Boylan, the parties should contact Kathy Thobe, Magistrate Judge Arthur J. Boylan's Calendar Clerk, at 651-848-1210 or Lowell Lindquist, Judge Donovan W. Frank's Calendar Clerk, at 651-848-1296.

For the reasons stated, **LET IT BE ORDERED** THAT:

1. Plaintiff's Motion for Preliminary Injunction (Doc. No. 76) is **GRANTED IN PART** consistent with the Court's reasoning outlined above and as follows:

   a. Defendant Erickson is **ENJOINED** from using in competition or from using to facilitate competition against Equus any of the Equus documents containing marketing, pricing, aor customer-related information that he is alleged to have taken or the Equus proprietary information that the relevant documents contain. The scope of this relief contemplates that Defendant Erickson will refrain from contacting or will refrain from facilitating the contact of Equus clients other than VARs, large group purchasers, and/or those who Defendant Erickson brought with him from Supercom to Equus, and that in initiating and

dealing with any such pre-Equus or non-DSG customers, Defendant will refrain from using or refrain from facilitating the use of Equus proprietary information;

b. To the extent that any spreadsheet or any other document maintained by any of the Defendants contains Equus proprietary information, such documents shall be returned to Plaintiff within 72 hours of this Memorandum Opinion and Order;

c. Defendant Nortech shall monitor the conduct of Defendant Erickson in order to ensure that any Equus proprietary information as determined by this Court shall not be used in competition against Equus

c. Because the current injunction provides no further relief than the Court's previous temporary restraining order in this matter, the Court will not require any further bond in addition to the $10,000 bond already posted.

Dated: July 22, 2002

DONOVAN W. FRANK
Judge of United States District Court